UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USA Masters Weightlifting, Inc.,

        Plaintiff,

   -v-

USA Weightlifting, Inc.,

        Defendant.

25-cv-6095 (JSR)

OPINION & ORDER

JED S. RAKOFF, U.S.D.J.:

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 24, 28. For the following reasons, the Court denies the motion of plaintiff USA Masters Weightlifting but grants the motion of defendant USA Weightlifting.

I.   Background

The Court assumes familiarity with the factual record as set forth in the parties' Rule 56.1 statements. Except where otherwise indicated, the following facts are undisputed. The defendant, USA Weightlifting, Inc., is a national governing body for the sport of weightlifting in the United States. USA Weightlifting oversees and operates national weightlifting events, including national championships. Defendant owns several federally registered trademarks and design marks, including word and design marks for "USA WEIGHTLIFTING" and "USA MASTERS WEIGHTLIFTING" (collectively, the "Marks"). These Marks are registered with the U.S. Patent and Trademark Office.

1

The term "masters" is used by many governing sports authorities to describe athletic competitions involving athletes over a certain age. Several decades ago, USA Weightlifting formed a Masters Committee to support and promote the growth and development of Olympic-style weightlifting for USA Weightlifting members 35 years and older. This "Masters Committee" was a committee within USA Weightlifting organized at the direction of and under the bylaws of USA Weightlifting, though the parties disagree as to the degree of autonomy the Masters Committee was given.

In November 2021, five members of the Masters Committee separated from USA Weightlifting and formed a new entity, which purported to be a continuation of the Masters Committee but which was subsequently incorporated and now known as plaintiff USA Masters Weightlifting, Inc., the plaintiff here. USA Weightlifting removed the five members from what it regarded as the true Masters Committee. Nevertheless, USA Masters Weightlifting began using the Masters Committee's social media pages and the Marks to promote its business and attract members to its organization.

As the conflict deepened, plaintiff USA Masters Weightlifting proactively brought this suit against defendant USA Weightlifting, alleging (1) defendant's wrongful registration of a generic term as a trademark; (2) defendant's fraudulent registration of a trademark previously used by plaintiff; and (3) plaintiff's prior

use and control of the trademarks asserted by the defendant. See ECF No. 1. On the basis of these claims, USA Masters Weightlifting seeks a declaratory judgment that the trademarks asserted by the defendant are invalid and not infringed by any actions taken by plaintiff, and that (1) the defendant be enjoined from indirectly or directly making or causing to be made any claims that USA Masters Weightlifting has infringed the USA Weightlifting's trademark; (2) the defendant be required to identify to USA Masters Weightlifting and file with this Court a report in writing and under oath identifying each individual and business entity to which such charges have been made by or on behalf of the defendant, and that each such entity or individual be notified that such charges are false and contrary to law; and (3) a final judgment be entered declaring defendant's trademarks and registrations to be invalid and that all relevant trademark registrations had been acquired by fraud.

In response, defendant USA Weightlifting, in addition to opposing plaintiff's claims, has answered with its own counterclaims. Specifically, USA Weightlifting alleges that plaintiff is guilty of (1) trademark violation in violation of 15 U.S.C. § 1114; (2) false designation of origin in violation of 15 U.S.C. § 1152(a); (3) violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A); (4) conversion; and (5) and (6) two violations of New York Deceptive Trade Practices law,

N.Y. Gen. Bus. Law § 349(a). Defendant USA Weightlifting also seeks both a judgment that plaintiff USA Masters Weightlifting has infringed upon the Marks and a judgment awarding USA Weightlifting damages in an amount to be proven at trial. ECF No. 19. As noted, both parties have now cross-moved for summary judgment.

II.   Legal Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material act and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party."[1] Frost v. N.Y.C. Police Dep't, 980 F.3d 231, 242 (2d Cir. 2020). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Torcivia v. Suffolk Cnty., 17 F.4th 342, 354 (2d Cir. 2021).

III. Discussion

---

[1] Except where otherwise indicated, all quotations in this Memorandum omit citations, internal quotation marks, footnotes, brackets, ellipses, and other such non-substantive alterations in the source material.

A.    Trademark Infringement and Unfair Competition

To prevail on a federal trademark infringement and unfair competition claim, the moving party must establish that it holds a protected mark and that the other party's use of an allegedly infringing mark would likely cause consumer confusion as to origin or sponsorship. Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009). New York state law mirrors the federal standard. See Capri Sun GmbH v. Am. Bev. Corp., 595 F. Supp. 3d 83, 145 (S.D.N.Y. 2022).

A mark is presumptively protected if it is registered with the United States Patent and Trademark Office ("USPTO"). Specifically, a certificate of registration from the USPTO constitutes "prima facie evidence that the mark is registered and valid (i.e., protectible), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 345 (2d Cir. 1999).

There are multiple Marks at issue in this case. Several of them are registered with the USPTO, narrowing the grounds on which USA Masters Weightlifting may challenge them. 15 U.S.C. § 1065. The Marks so registered that form the basis of USA Weightlifting's claims therefore enjoy a presumption of protection. See Christian Louboutin S.A. v. Yves Saint Laurent Am. Hldgs., Inc., 696 F.3d 206, 216 n.10 (2d Cir. 2012) (noting that the burden rests on the

opposing party to demonstrate "by a preponderance of the evidence, that [such a] mark is ineligible for protection"). USA Masters Weightlifting nonetheless advances three challenges to USA Weightlifting's ownership: (1) that the Marks are generic; (2) that USA Weightlifting did not actually control use of the marks; and (3) that USA Weightlifting committed fraud on the USPTO.

A mark is generic when, in the mind of the relevant purchasing public, it refers to the product or service category itself rather than to the source of that product or service. Courtenay Commc'ns Corp. v. Hall, 334 F.3d 210, 214-17 (2d Cir. 2003). Courts evaluating genericness look to evidence of widespread uncontested use by competitors, generic use by the mark owner itself, dictionary definitions, media usage, and consumer surveys. Horizon Mills Corp. v. QVC, Inc., 161 F. Supp. 2d 208, 214 (S.D.N.Y. 2001).

USA Masters Weightlifting has produced none of the evidence courts require. It offers no consumer surveys, no examples of uncontested widespread use by competitors, no media usage treating "USA Masters Weightlifting" as a generic category descriptor, and no dictionary definition encompassing the phrase. Its sole argument that "USA masters weightlifting" is a generic term to describe older American weightlifters is conclusory and unsupported by any citation to the record.

USA Masters Weightlifting contends, instead, that USA Weightlifting "must come forward with evidence the relevant public

d[oe]s not consider 'USA masters weightlifting' to be the common descriptive term for older weightlifters from the U.S." ECF No. 33 at 6. This argument misapprehends the applicable burden of proof: it is the *opposing party* who must demonstrate that a trademark was incorrectly granted by establishing that the mark is generic. A conclusory assertion that the Marks here at issue are generic terms for older weightlifters does not satisfy that burden.

Moreover, even assuming (contrary to the law and facts here applicable) that USA Masters Weightlifting's conclusory assertions were somehow sufficient to shift the burden to USA Weightlifting, USA Weightlifting has presented substantial evidence supporting the protectability of its Marks. Courts consider several non-exclusive factors when evaluating protectability, including advertising expenditures, unsolicited media coverage, consumer studies linking the mark to a source, sales success, attempts to plagiarize the mark, and the length and exclusivity of use. See Victorinox AG v. B&F Sys., Inc., 114 F. Supp. 3d 132, 137-38 (S.D.N.Y. 2015). USA Weightlifting has established that it has used the relevant Marks for more than two decades, receives unsolicited media coverage for events it hosts using its Marks, and expends approximately $70,000 annually on sales, marketing, and media campaigns to promote the USA Weightlifting Marks. ECF No. 26 ¶¶ 103-04. Accordingly, USA Weightlifting has adequately demonstrated that the Marks at issue are protected.

USA Masters Weightlifting's next argument is that USA Weightlifting did not actually control the nature and quality of the goods and services bearing the Marks, and therefore cannot claim as its own the plaintiff's use of the Marks through the Masters Committee. It argues that for USA Weightlifting to claim control over the Masters Committee's use of the Marks, USA Weightlifting must demonstrate that the Masters Committee was a "related company" as defined by the Lanham Act. 15 U.S.C. § 1127 (defining "related company" as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used"). But the "related company" doctrine has no application here, because at all times here relevant the Masters Committee was a part of the same legal entity as USA Weightlifting. The record on this point is overwhelming. USA Weightlifting's bylaws provide that the Masters Committee serves at the request of the USA Weightlifting Board of Directors, and the Masters Committee's own operating procedures state that it is a committee organized pursuant to the bylaws of USA Weightlifting, ECF No. 26 ¶¶ 13, 17. Further still, the attempt in May 2023 by the members of the Masters Committee to "separate" from the Masters Committee of USA Weightlifting, id. ¶ 115, is entirely incompatible with the claim that the separating body was already independent.

Because the Masters Committee was a part of USA Weightlifting, USA Weightlifting's use of the Marks through its Masters Committee was USA Weightlifting's own use. No related company analysis is required or appropriate.

Undisputed facts of record also demonstrate that USA Weightlifting exerted complete control of the Masters Committee during the relevant period. All Masters Committee events were USA Weightlifting-sanctioned, open only to USA Weightlifting members, conducted under USA Weightlifting rules, insured by USA Weightlifting, and subject to USA Weightlifting inspection and oversight. See ECF No. 26 ¶¶ 44-50. The Masters Committee's own operating procedures required adherence to "bylaws then in effect of the National Board of USA Weightlifting, Inc." Id. ¶ 20. USA Weightlifting conducted survey of participating athletes to get feedback on how USA Weightlifting and the Masters Committee handled weightlifting events and related matters. Id. ¶ 49. These are the ordinary operations of a subordinate committee of a national governing body.

Finally, USA Masters Weightlifting attempts to argue fraud on USPTO. "A party seeking cancellation of a trademark based on fraud bears a heavy burden." Victorinox AG, 114 F. Supp. 3d at 137-38. Misstatements in a registration application will justify cancellation "only if they were made with knowledge of their falsity and if they were material to the decision to grant the

registration application." Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc., 63 F. Supp. 2d 329, 335 (S.D.N.Y. 1999). Here, USA Masters Weightlifting alleges that USA Weightlifting falsely represented to the USPTO that specimens for several registrations were "screenshots from Applicant's website reflecting Applicant's use of its mark in connection with the advertisement of its services." ECF No. 1 ¶¶ 66-73. USA Masters Weightlifting contends that the specimens were taken from its website and depict an event conducted by plaintiff in March 2023. Id. ¶¶ 70, 72, 74, 76, 79. Yet the evidence demonstrates that USA Masters Weightlifting did not exist until April 24, 2023 -- more than a month after the events and uses depicted in the specimens. See discussion ECF No. 38 at 17. And, in any event, USA Masters Weightlifting identifies no evidence that USA Weightlifting made statements to the USPTO with "knowledge of their falsity."

Turning to defendant's counterclaims, the next question is whether USA Masters Weightlifting's use of the Marks creates a likelihood of consumer confusion. Courts consider eight non-exclusive factors in evaluating the likelihood of consumer confusion: (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may bridge the gap by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion;

10

(6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market. Souza v. Exotic Island Enters., Inc., 68 F.4th 99, 110 (2d Cir. 2023).

These factors weigh overwhelmingly and beyond any genuine dispute in favor of USA Masters Weightlifting's claims. With respect to the strength of the mark, relevant considerations include "advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use." Centaur Comms., Ltd. v. A/S/M Comms., 830 F.2d 1217, 1222 (2d Cir. 1987). As discussed above, USA Weightlifting has demonstrated a long history of using the Marks, substantial advertising expenditures, unsolicited media coverage, and significant commercial success.

USA Masters Weightlifting's Marks are identical or substantially similar to USA Weightlifting's Marks. ECF No. 25 at 15. Moreover, because the parties sell their offerings through the same channels to the same class of purchasers, "less similarity than might otherwise be required may lead to confusion." RJR Foods, Inc. v. White Rock Corp., 1978 WL 21389, at *2 (S.D.N.Y. 1978). That is especially true here, where the parties target the same consumers (weightlifters), through the same channels (the

11

internet), and offer the same services (arranging and conducting weightlifting events and competitions).

The proximity of the products and their competitiveness also favor USA Masters Weightlifting's claims. "The proximity inquiry asks to what extent the two products compete with each other." Birmingham v. Mizuno USA, Inc., 2011 WL 1299356, at *8 (N.D.N.Y. Mar. 31, 2011). As discussed above, the parties' offerings are nearly identical.

Additionally, USA Weightlifting has provided undisputed evidence of substantial actual consumer confusion, including confusion on social media and inquiries directed to USA Weightlifting that conflate the two organizations and their weightlifting events. ECF Nos. 34-11, 34-12 (attaching emails from consumers reaching out to the wrong organization). "There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion." Birmingham, 2011 WL 1299356, at *8 (quoting Savin Corp. v. Savin Grp., 391 F.3d 439, 449 (2d Cir. 2004)).

USA Masters Weightlifting's bad faith is, on this record, also clear beyond any genuine dispute. Its principals formed a competing entity in secret, then purported to transfer USA Weightlifting's own property to that entity without authority. USA Masters Weightlifting then used the identical marks, the identical website URL, and near-identical website content. It continues to

post USA Weightlifting's own historical financial documents on the website to create the misleading impression of organizational continuity. When USA Masters Weightlifting's CEO was asked what authority he had to declare USA Masters Weightlifting the "successor" of USA Weightlifting's Masters Committee, he responded: "I'm having a hard time grasping what authority I needed to say that. . . . I just said it." ECF No. 26 ¶ 147. Slavish copying of a senior user's marks is itself sufficient to establish bad faith as a matter of law. Victorinox AG, 114 F. Supp. 3d at 141. This factor heavily favors USA Weightlifting.

Rather than genuinely dispute the strength of these and other factors with any material evidence of record, USA Masters Weightlifting asserts a fair use defense, claiming that it is not using the Marks as a trademark. To prevail on this defense, USA Masters Weightlifting must prove that its use was made: (1) other than as a mark; (2) in a descriptive sense; and (3) in good faith. See Disney Enters., Inc. v. Sarelli, 322 F. Supp. 3d 413, 430-31 (S.D.N.Y. 2018). But undisputed evidence establishes that USA Masters Weightlifting has not used the Marks in question merely to describe weightlifters of a certain age in the United States, but rather to brand and promote its new business. Moreover, USA Masters Weightlifting cannot establish good faith because it directly copied the Marks and portrays itself as the continuation of the USA Weightlifting Masters Committee.

Accordingly, the Court grants defendant USA Weightlifting's motion for summary judgment on its trademark infringement and unfair competition claims under federal and New York state law.

B.    Anticybersquatting Consumer Protection Act

USA Weightlifting's next claim arises under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(1)(A). To establish a cybersquatting claim, the moving party must show: (1) that the infringed-upon mark is "distinctive or famous"; (2) that the domain name is "identical or confusingly similar to" the mark; and (3) that the alleged cybersquatter acted with "bad intent to profit." Amplify Car Wash Advisors LLC v. Car Wash Advisory LLC, 770 F. Supp. 3d 625, 639, 641 (S.D.N.Y. 2025). USA Masters Weightlifting raises no independent arguments in opposition to this claim but instead relies on the arguments already rejected above.

For the reasons stated above, the Marks are presumptively distinctive by virtue of their federal registration, and USA Weightlifting's exclusive use of the Marks further supports their distinctiveness. Moreover, the statutory factors and circumstances establish USA Masters Weightlifting's bad faith intent to profit. See 15 U.S.C. § 1125(d)(1)(B)(i) (listing factors relevant to determining bad-faith intent to profit). USA Masters Weightlifting cannot demonstrate prior use of the name, and the evidence establishes an intent to profit from the infringing domain name

14

and to solicit members despite USA Weightlifting's requests to cease.

Accordingly, the Court grants defendant USA Weightlifting's motion for summary judgment on its anticybersquatting claim.

C.    Conversion

USA Weightlifting's next claim is for conversion. To establish liability for conversion, the moving party must demonstrate ownership, possession, or control of the property at issue before its conversion, and that the party in question "exercised unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." Am. Lecithin Co. v. Rebmann, 2020 WL 4260989, at *5 (S.D.N.Y. July 24, 2020). The record establishes that USA Weightlifting, through its Masters Committee, controlled the domain names mastersweightlifting.org and usamastersweightlifting.com, that USA Weightlifting funded and controlled the Masters Committee, and that these websites were used for the benefit of USA Weightlifting and its members. USA Masters Weightlifting now exercises dominion and control over the websites and has refused to return control of them to USA Weightlifting. ECF No. 29 ¶¶ 122-28, 130-33.

Once again, USA Masters Weightlifting does not directly respond to this claim. But its principal argument appears to be that trademark ownership rights belong to the first-to-use, not

15

the first-to-register. Haggar Int'l Corp. v. United Co. for Food Indus. Corp., 906 F. Supp. 2d 96, 105 (E.D.N.Y. 2012). However, USA Weightlifting has demonstrated that it was also the first to use the sites at issue because the evidence establishes that the Masters Committee existed at the relevant time as a part of USA Weightlifting. Accordingly, conversion is established as a matter of law.

D.    Declaratory Relief

Because USA Masters Weightlifting's claims for declaratory relief are the converse of the issues resolved against it above, they require no extended separate analysis, with the exception of the prior use claim, which raises the distinct question of whether USA Masters Weightlifting holds independent trademark rights. That question is resolved by the record, which establishes beyond genuine dispute that USA Masters Weightlifting only existed after April 24, 2023, and that it can claim no successor rights to the Masters Committee for the reasons stated above.

IV.  Conclusion

For the foregoing reasons, the Court denies plaintiff USA Masters Weightlifting's motion for summary judgment in its entirety and grants defendant USA Weightlifting's motion for summary judgment in its entirety. Accordingly, all of plaintiff's claims are hereby dismissed, and liability is hereby established on all of defendant's counterclaims. The parties are therefore

16

directed to call chambers at 2:30 p.m. on Wednesday, March 18, to schedule all further proceedings, including the determination of any injunctive relief to be awarded to defendant, and trial to determine damages on defendant's counterclaims. The Clerk of Court is respectfully directed to close ECF Nos. 24, 28, 29, 30, 31, 32, and 33.

　　　　SO ORDERED.

New York, NY
March 17, 2026

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
JED S. RAKOFF, U.S.D.J.