UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USA Masters Weightlifting, Inc.,

          Plaintiff,

     -v-

USA Weightlifting, Inc.,

          Defendant.
```

25-cv-6095 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

Following the Court's decision granting summary judgment in favor of defendant/counterclaim plaintiff USA Weightlifting, Inc. ("USAW"), the parties briefed the issue of USAW's motion for damages, fees, and costs associated with the instant action. See ECF Nos. 60, 63, 67. This Memorandum Order resolves that motion.

I.     Background

The Court presumes the parties' familiarity with the allegations and procedural history underlying this dispute. Relevant here, however, is that after USA Masters Weightlifting ("USAMW") initiated this action against USAW, USAW brought its own counterclaims against USAMW, alleging (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) false designation of origin in violation of 15 U.SC. § 1125(a); (3) violation of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1)(A); (4) conversion; and (5) and (6) two violations of New York Deceptive Trade Practices law. Following briefing and

1

argument on the parties' cross-motions for summary judgment, see ECF Nos. 24, 28, 29, 30, 31, 32, and 33, this Court granted USAW's motion for summary judgment in its entirety, establishing USAMW's liability on each counterclaim, ECF No. 48. In the Court's Opinion and Order granting summary judgment in favor of USAW, it explained, inter alia, that "USA Masters Weightlifting's bad faith is . . . clear beyond any genuine dispute." ECF No. 48 at 12. In particular, the Court noted that USAMW's "principals formed a competing entity in secret, then purported to transfer [USAW]'s own property to that entity without authority," before "us[ing] the identical marks, the identical website URL, and near-identical website content . . . to create the misleading impression of organizational continuity." Id.

The Court further entered a permanent injunction against USAMW on April 17, 2026. ECF No. 57.

II.  Discussion

USAW now requests an award that includes (1) actual damages equal to USAMW's profits attributable to its infringement and unfair competition; (2) statutory damages or the greater of three times USAMW's profits; (3) actual or statutory damages for USAMW's cyberpiracy; (4) attorneys' fees; and (5) miscellaneous other relief. The Court considers each request in turn.

2

A. Actual Damages Equal to USAMW's Profits

The Lanham Act permits successful claimants to recover profits attributable to a party's violations of law. See 15 U.S.C. § 1117(a). Here, USAW alleges that since USAMW launched in 2023, it earned a total of $92,928.00 from membership sales. Further, USAW alleges that every dollar of that revenue is attributable to USAMW's direct infringement of USAW's protected "marks," including designs and words, and a nearly identical copy of USAW's website. ECF No. 60 at 5-6.

The Court agrees with USAW that much of USAMW's revenue from "membership dues" can be traced to its infringement of USAW's marks and website. But the problem with USAW's argument is that USAW is not entitled to all of USAMW's *revenue* -- it is only entitled to USAMW's *profits*. See 15 U.S.C. § 1117(a) (noting that claimants are entitled to recover "(1) defendant's profits, (2) any damages sustained by the [claimant], and (3) the costs of the action"). USAW sets forth USAMW's revenue from membership dues for 2023, 2024, and 2025, and requests the total sum (labeling it as "profit") for those years, but does not account for the fact that USAMW had expenses during those years.[1]

_____

[1] USAW contends that the Court should not consider USAMW's delayed production of financial statements upon which USAMW relies to calculate their expenses. See discussion ECF No. 67 at 6 (citing ECF No. 63-4, 63-5). But the calculation of USAMW's expenses can be drawn from USAW's own exhibits. See ECF No. 59-1. Accordingly,

Based on the aforementioned, the Court reviews the parties' submissions to determine what USAMW's profits were in 2023, 2024, and 2025. In 2023, USAMW's revenue less expenses amounted to $12,102, minus a $10,398 donation from USAMW's founding members not attributable to infringing activities, which leads to a sum of $1,704.[2] ECF No. 59-1 at 2. In 2024, revenue less expenses amounted to $89. Id. at 4. And in 2025, the amount was $3,198. Id. at 7. The Court accepts, as noted, that all of these profits can be traced to USAMW's infringement of USAW's marks and website. Accordingly, USAW is entitled to $4,991 in actual damages.

B. The Greater of Three Times of USAMW's Profits or Statutory Damages

If the infringer's violation is intentional, the Lanham Act permits plaintiffs to recover treble damages of the infringer's profits under 15 U.S.C. § 1117(b) or statutory damages under 15 U.S.C. § 1117(c) of between $1,000 and $2,000,000, 15 U.S.C. § 1117(a)-(c).

---

the Court calculates USAMW's actual profit based on USAW's exhibits.

[2] The parties briefly dispute whether the $10,398.00 contribution from USAMW's founding members was included in USAW's initial calculation of "profit." See ECF No. 63 at 9; ECF No. 67 at 1. For the purposes of this motion, the Court agrees with USAW that its initial calculation of $92,928.00 did not include founder contributions. See generally ECF No. 59-1. But because the Court disagrees that USAW is entitled to that entire sum, it handles the founder contribution in its own calculation.

Here, three times $4,991 in actual damages would equate to $14,973. The Court finds that number adequate for USAW's recovery. Specifically, it notes that (1) it has already entered a permanent injunction against USAMW, and (2) that, based upon "principles of equity," 15 U.S.C. § 1117(a), a greater award would be unduly harsh. As to the permanent injunction already entered, ECF No. 57, the Court has already enjoined USAMW from using the marks at issue, the words "USA Masters Weightlifting" or "USA Weightlifting," in almost any capacity whatsoever, id. at 5-6. Such a broad injunction already encompasses much of the relief that USAW seeks here. And to the extent that damages here are intended to recompense USAW for its losses, USAW has pointed to no such losses in their damages briefing, such as, for example, a consumer that intended to sign up with USAW but was instead misled into joining USAMW. Finally, to the extent that damages are intended to be punitive, given USAMW's willful infringement, the trebling of actual damages accomplishes that goal.

C. Actual or Statutory Damages for Plaintiff's Cyberpiracy

Plaintiffs may elect to recover an award of "actual damages and profits" or, alternatively, "an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just," for violations of the ACPA.

Here, USAW reiterates that USAMW "profited" from its use of the infringing domains, mastersweightlifting.org and usamastersweightlifting.com, in the amount $92,928, and requests that amount in actual damages. ECF No. 60 at 10. There are two issues with this request. The first is, as noted supra, USAMW did not "profit" in the amount of $92,928, but only received that amount in *revenue*. USAMW profited $4,991 for the years in question. Moreover, USAW's request would amount to double recovery: the Court has already awarded USAW actual damages for USAMW's violation of the Lanham Act, based on the reasoning that USAMW's profits were generated, in part or in whole, from its infringement of USAW's marks *and* website. Accordingly, awarding an additional $4,991 here would be replicating the actual damages discussed earlier.

Nevertheless, the Court agrees with USAW that it is entitled to some damages for USAMW's separate violation of the ACPA. District courts have "wide discretion in awarding statutory damages." optionsXpress, Inc. v. optionsXpress, Inc., 2014 WL 3728637, at *5 (S.D.N.Y. Jul. 28, 2014). In awarding statutory damages under the ACPA, courts consider "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of

6

the parties." <u>Paul Saladino MD v. Tufano</u>, 2025 WL 4380136, at *4-5 (S.D.N.Y. Oct. 30, 2025). Based on these factors, USAW argues that a damage award "at the statutory maximum" -- in other words, $100,000 -- would be appropriate. ECF No. 60 at 11.

Though some of these factors favor a high damages award, such as the state of mind, expenses saved, cooperation (or lack thereof), and conduct of the infringer, not all of them cut in favor of such a large award. Specifically, USAMW's profits are minimal and USAW has pointed to little to no revenue lost on its end due to USAMW's conduct. Accordingly, the Court awards USAW $50,000 in statutory damages for USAMW's ACPA violation, finding that amount sufficient, without being excessively so, to punish the bad faith on the part of USAMW and deter other actors from infringement.

D. <u>Attorneys' Fees</u>

Under the Lanham Act, in cases involving willful infringement using a counterfeit mark, an award of actual damages mandates an award of reasonable attorney's fees. 15 U.S.C. § 1117(b). Here, USAW has requested $262,899.01 in attorneys' fees, based upon the hours expended and work completed by USAW's attorneys. ECF No. 60 at 14. USAMW has not briefed any opposition to USAW's requested fees. And the Court's independent inquiry into the requested hourly rate and number of hours required by the case, i.e., the "lodestar," <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d

7

Cir. 2011), further confirms that USAW's requested attorneys' fees are reasonable. Accordingly, the Court grants USAW's request for $262,899.01 in attorneys' fees.

### E. Additional Costs

USAW requests further damages and fees based on (1) the cost of the action, 15 U.S.C. § 1117(a), (2) pre-judgment interest, 15 U.S.C. 1117(b), and (3) post-judgment interest, 28 U.S.C. § 1961(a). The Court grants each of these requested fees.

First, as to the costs of the suit, USAW requests $13,442.84, comprising expenses related to discovery, transcription, and travel. "These are  . . .  routine costs awarded to prevailing parties in trademark . . . infringement actions," GAKM Res. LLC v. Jaylyn Sales Inc., 2009 WL 2150891, at *10 (S.D.N.Y. Jul. 20, 2009), and, indeed, USAMW does not oppose this request. Further, the unique nature of this suit -- where USAW began as the defendant and ended up as the prevailing party -- underscores the reasonableness of awarding these costs. Accordingly, the Court awards USAW $13,442.84 for the expenses associated with this litigation.

Second, with respect to pre-judgment interest, courts are permitted to grant such interest where a party intentionally and knowingly infringes upon a mark and provides good or services necessary to the commission of that violation. 15 U.S.C. § 1117(b). USAMW clearly falls within the umbrella of that subsection, and,

8

in any event, offers no argument as to why pre-judgment interest should not be awarded here. Accordingly, the Court grants pre-judgment interest at the interest rate established under 26 U.S.C. § 6621(a)(2), to wit 7.85%.[3] Calculated from the date of service of the claimant's pleadings to the date when judgment will be entered, i.e., June 9, 2026, and compounding quarterly, see SEC v. Skelley, 2021 WL 863298, at *7-8 (S.D.N.Y. Feb. 25, 2021), this amount comes to $20,520.58.

Third, as to post-judgment interest, such interest is mandatory under 28 U.S.C. § 1961(a). See Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008). Accordingly, USAW is entitled to post-judgment interest that is calculated from the entry of judgment.

III. Conclusion

Based on the foregoing, the Court awards USAW:

- $14,973 in actual, trebled damages under the Lanham Act;

- $50,000 in statutory damages under the ACPA;

- $262,899.01 in reasonable attorneys' fees;

- $13,442.84 in costs of suit;

---

[3] 26 U.S.C. § 6621(a)(2) directs courts to calculate pre-judgment interest rates by adding 3% to the current IRS federal short-term rate. The current short-term federal interest rate is 3.85%. See Applicable Federal Rates (AFR) for June 2026, Internal Revenue Serv. at 2, available at http://apps.irs.gov/app/picklist/list/federalRates.html (last visited June 8, 2026).

- $20,535 in pre-judgment interest from September 9, 2025, through June 9, 2026; and

- Post-judgment interest, as appropriate under 28 U.S.C. § 1961(a), from entry of judgment.

The Clerk's Office is respectfully directed to enter final judgment in favor of defendant/counterclaim plaintiff USAW in the amount of $361,835.43 and to close this case.

SO ORDERED.

New York, NY
June 8, 2026

JED S. RAKOFF, U.S.D.J.